NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FEB 16 2023

FOR THE NINTH CIRCUIT



MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

INFONEURO GROUP, DBA Beverly
Hills Pain Institute and Neurology, a
California Corporation; et al.,

Plaintiffs-Appellants,

v.

AETNA LIFE INSURANCE COM-
PANY; DOES, 1 to 10, inclusive,

Defendants-Appellees.

No.   22-55239

D.C. No.
2:16-cv-05083-AB-JC

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Andre Birotte Jr., District Judge, Presiding

Argued and Submitted February 6, 2023
Pasadena, California

Before: BOGGS,** IKUTA, and DESAI, Circuit Judges.

Playa Advanced Surgical Institute and affiliated parties ("Playa") sued Aetna

Life Insurance Company ("Aetna") under ERISA for unpaid medical bills. The

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Danny J. Boggs, Senior Circuit Judge of the United States Court
of Appeals for the Sixth Circuit, sitting by designation.

district court granted summary judgment to Aetna on most of Playa's claims, holding that Playa lacked standing to bring these claims, because the right to bring such a suit belonged to the patients, not to Playa. The parties then engaged in a settlement conference and agreed to settle and dismiss all of their claims and counterclaims. When the parties could not agree on written language to execute their settlement, the district court granted Aetna's motion to enforce the settlement. Playa now appeals both of the district court's orders. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.  We review a district court's enforcement of a settlement agreement for abuse of discretion. *Parsons v. Ryan*, 912 F.3d 486, 495 (9th Cir. 2018); *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1136 (9th Cir. 2002).

"An agreement to settle a legal dispute is a contract," and state contract law governs its enforcement. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1990). Under California law, the parties' consent is an essential element of a contract. *Lopez v. Charles Schwab & Co.*, 13 Cal. Rptr. 3d 544, 548 (Ct. App. 2004) (citing Cal. Civ. Code § 1550). Mutual assent consists of an offer communicated to the offeree and an acceptance communicated to the offeror. *Ibid.* Mutual assent is determined by objective criteria, meaning by "what the outward manifestations of consent would lead a reasonable person to believe." *T.M. Cobb Co. v. Superior Ct.*, 682 P.2d 338, 343 (Cal. 1984) (quoting *Meyer v. Benko*, 127 Cal. Rptr. 846, 848 (Ct. App. 1976)).

An acceptance must be "absolute and unqualified." Cal. Civ. Code § 1585. An unqualified acceptance, even if "made with some protest" and "grumbling," is enough. *Chi. Bridge & Iron Co. v. Indus. Accident Comm'n*, 38 Cal. Rptr. 57, 62 n.2 (Ct. App. 1964); *see also Guzman v. Visalia Cmty. Bank*, 84 Cal. Rptr. 2d 581, 584 (Ct. App. 1999) ("[A]n acceptance is not invalidated by the fact that it is 'grumbling,' or that the offeree makes some simultaneous 'request.'").

2.  The settlement-conference transcript shows that Playa, through its representative, Dr. Guven Uzun, understood and accepted the terms of the oral agreement, which created a binding settlement. When Dr. Uzun suggested that he did not understand some of the settlement terms, the magistrate judge recessed to explain and confirm the terms. The magistrate judge twice informed Dr. Uzun that he did not have to settle the case. Moreover, the magistrate judge read the terms aloud, asking Dr. Uzun after each term if he agreed to the term on Playa's behalf. Dr. Uzun agreed to each term. After the party representatives agreed to each of the terms, the magistrate judge confirmed a binding settlement. Dr. Uzun acknowledged that the terms were binding. Despite expressing hesitancy at some points during the settlement conference, Dr. Uzun ultimately accepted the terms unequivocally and without condition.

Playa argues that it did not communicate an unqualified acceptance of the settlement, noting instances during the settlement conference where Dr. Uzun "felt

3

compelled to accept the settlement" involuntarily. We disagree. As the district court noted, Playa's "selective citations . . . fail to reflect the totality of what occurred" at the settlement conference. Although the record shows that Dr. Uzun felt wronged by Aetna and was dissatisfied with the outcome of his lawsuit, it also shows that Dr. Uzun knew what he was doing when he agreed to the settlement. That Playa expressed "some protest" or "grumbling" during the settlement conference does not foreclose a finding of absolute and unqualified acceptance. *Chi. Bridge*, 38 Cal. Rptr. at 62 n.2.

Playa alternatively argues that it issued a counteroffer that Aetna never accepted. Dr. Uzun, Playa contends on appeal, qualified his acceptance of the settlement terms on the additional condition that the settlement would not release Aetna from claims that he might make for "fraud and deception and illegal activities." However, Dr. Uzun also acknowledged, in the same statement, that "[t]here is no broad settlement beyond this case." This language suggests not only that Dr. Uzun intended to agree to the settlement but also that any reservations regarding Aetna's alleged fraud concerned activities beyond the scope of the settlement, such as frauds allegedly committed against Dr. Uzun in his personal capacity.

3. Playa also challenges the written settlement that executed the oral agreement, arguing that its failure to agree on the language of that settlement confirms that a binding agreement was never formed. But failing to sign a written settlement

4

has no effect on the validity of the parties' oral agreement. *See, e.g.*, *Doi*, 276 F.3d at 1139–40; *Blix St. Records, Inc. v. Cassidy*, 119 Cal. Rptr. 3d 574, 582 (Ct. App. 2010). At the settlement conference, the magistrate judge noted that Playa and Aetna had "all agreed on the record irrespective of whatever form there may be in long form" that the terms of their oral agreement were binding.

Playa contends that the written settlement expanded on the original terms of the oral agreement without its consent. Playa notes, for example, that it had not agreed to expand the scope of the release to its representatives acting on its behalf, or to dismiss the claims adjudicated in Aetna's motion for partial summary judgment. But such language is standard practice in settlement agreements between legal entities, *see Doi*, 276 F.3d at 1139 & n.6 (noting that language including in a corporate party "anyone on [its] behalf" was part of "a very standard release clause"), and does not expand the substantive scope of the agreement, *id.* at 1139.

Nor can Playa claim that it did not agree "to dismiss the entire action" under Federal Rule of Civil Procedure 41. The settlement terms plainly state that they apply to all claims and counterclaims filed in this lawsuit, including those claims previously dismissed in the district court's grant of partial summary judgment.

The written settlement that Playa was ordered to sign did not conflict with the oral agreement that it entered into. Therefore, we hold that the district court did not abuse its discretion in enforcing the settlement agreement.

4.  Because the settlement and joint stipulation required Playa to dismiss all of its claims in this case, we need not reach its challenge to the district court's grant of partial summary judgment.

**AFFIRMED.**